UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WESLEY SPRATT,<br> Petitioner,<br><br>    v.<br><br>ASHBEL T. WALL, et al.<br> Respondent. | )<br>)<br>)<br>)<br>)   C.A. No. 03-390-M<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

JOHN J. McCONNELL, JR., United States District Judge.

Before the Court for decision is the State of Rhode Island's Motion to Dismiss Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody. (ECF No. 60.)[1] The State argues that the eight grounds for relief contained in Petitioner Wesley Spratt's habeas petition (the Petition) were either procedurally defaulted or properly rejected by the Rhode Island Supreme Court. *Id.* Mr. Spratt counters that the State's motion should be denied because he presents meritorious claims and triable issues that have not been procedurally defaulted. (ECF Nos. 66, 67-1, 70.) Upon consideration of Mr. Spratt's Petition (ECF No. 57), the Court GRANTS the State's Motion to Dismiss Mr. Spratt's Petition on all grounds.

## I.    FACTS AND TRAVEL

Mr. Spratt was convicted after a jury trial for first-degree murder, carrying a pistol without a license, and committing a crime of violence with a firearm that resulted in the death of Christopher Naylor, an attendant at a Snow Street parking lot in downtown Providence on December 20, 1995. There is no need to recount the facts here because the facts underlying

---

[1] To maintain consistent references, all page numbers in documents appearing in the Case Management/Electronic Case Filing ("CM/ECF") system refer to the CM/ECF page as opposed to the pagination in the original document.

Mr. Spratt's conviction are well and thoroughly described in the Rhode Island Supreme Court opinion affirming his conviction, *State v. Spratt*, 742 A.2d 1194 (R.I. 1999) (*Spratt I*) and in that court's decision affirming the trial court's judgment denying Mr. Spratt's application for state post-conviction relief, *Spratt v. State*, 41 A.3d 984, 988 (R.I. 2012) (*Spratt II*). Certain relevant facts from these opinions are set forth below.

On December 20, 1995, Anthony Tortolani was working as an attendant at a parking lot on Weybosset Street in downtown Providence. Two men in the rear of the parking lot caught his attention. He recognized one as Wesley Spratt, a person with whom he had been acquainted. The other man was later identified as Mark Warren.

Mr. Tortolani testified that Mr. Spratt was emotional as he told Mr. Tortolani that he needed money because he had been in an accident while driving someone else's car the previous night. Mr. Spratt admitted that he and Mr. Warren had originally planned to rob Mr. Tortolani but then decided against it because Mr. Tortolani was a friend. Nevertheless, Mr. Spratt confided in Mr. Tortolani that he was definitely going to rob somebody that night, and pulled out a gun to prove his sincerity. When Mr. Spratt asked Mr. Tortolani for money, he gave him a twenty-dollar bill, but Mr. Spratt complained that it was not enough. Mr. Spratt then walked off angrily, in the direction of Snow Street. Mr. Warren followed. After Mr. Spratt left, Mr. Tortolani called the police to report that two men, one of whom was armed, were about to commit a robbery.

Mr. Warren continued to follow Mr. Spratt to a nearby parking lot on Snow Street. About thirty feet from the parking attendant booth, Mr. Warren stopped following him and watched Mr. Spratt approach the booth, enter it, and close the door behind him. Seconds later Mr. Spratt ran out of the booth. Mr. Warren heard moaning and a cry for help from inside the

2

booth.  Mr. Spratt and Mr. Warren ran to their car.  Mr. Warren asked Mr. Spratt what had happened in the booth, to which Mr. Spratt remarked, "Don't worry about it."  When Mr. Warren questioned him about the screams he heard, Mr. Spratt explained "the guy scuffled" with him.

During these events, Raymond Perrin was cleaning the snow from his car parked in the Snow Street lot.  When he heard someone shout, "This man's been shot!," he turned toward the voice and saw a man running away from the attendant's booth.  Mr. Perrin saw the profile of the fleeing man's face from roughly fifteen feet away for a period he estimated to be between ten and fifteen seconds.  After hearing someone shout something like, "Call an ambulance," Mr. Perrin ran to a nearby building and asked the guard there to call 911.  Despite the efforts of medical personnel, the victim died from a shot to his abdomen.

Later that evening, Providence police officers apprehended and arrested Mr. Spratt in response to a police radio broadcast that identified him as a possible suspect in a robbery and shooting in downtown Providence.

A grand jury indicted Mr. Spratt on five counts: murder, robbery in the first degree, larceny of a firearm, carrying a pistol without a license, and commission of a crime of violence when armed with a stolen firearm.  After trial in Superior Court, the jury found Mr. Spratt guilty of murder while committing or attempting to commit robbery, guilty of first-degree robbery, guilty of carrying a pistol without a license, and guilty of committing a crime of violence while armed with a firearm.[2]

After receiving the sentence of life imprisonment on the murder convictions, ten years on each weapons offense to run consecutively, and twenty additional years for being adjudged a

_____

[2] The jury found Mr. Spratt not guilty of larceny of a firearm and found that he did not commit robbery with a gun that he knew to be stolen.  The jury further found that Mr. Spratt did not intentionally kill the victim.

habitual offender, Mr. Spratt appealed to the Rhode Island Supreme Court. That court denied Mr. Spratt's appeal from his convictions. *Spratt I*, 742 A.2d 1194. Mr. Spratt filed a state post-conviction petition in March of 2003 and a federal post-conviction petition that same year. During his state petition hearing, Mr. Spratt claimed that the state court lacked jurisdiction and demanded that the Federal District Court hear his arguments. The state court dismissed his petition. The federal court stayed Mr. Spratt's federal petition in March of 2005 because he failed to exhaust his state remedies. Back in Rhode Island Superior Court, Mr. Spratt re-filed his petition, but it was dismissed because he had previously voluntarily dismissed his 2003 application. Mr. Spratt appealed that dismissal; the Rhode Island Supreme Court vacated the dismissal in June of 2007, and sent the state petition back to Superior Court. He received a post-conviction relief hearing in May of 2009 after which his petition was denied. Mr. Spratt then appealed that denial to the Rhode Island Supreme Court. That court affirmed the Superior Court's denial of his application for post-conviction relief. *Spratt II*, 41 A.3d 984.

His state petition exhausted, Mr. Spratt now turns to this Court for relief under the Antiterrorism and Effective Death Penalty Act of 1996.

## II.    STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214, restricts federal court review of state court convictions and sentences. Before a federal court can reach the merits of a habeas claim, the petitioner "must have fairly presented his claims to the state courts and must have exhausted his state court remedies." *McCambridge v. Hall*, 303 F.3d 24, 34 (1st Cir. 2002) (citing 28 U.S.C. § 2254(b)(1)(A)). When a federal court reaches the merits of a habeas claim, the applicable standard of review depends on whether the state court adjudicated the petitioner's claim on the merits. *See, e.g., Healy v. Spencer*, 453 F.3d

21, 25 (1st Cir. 2006). Where a claim "was adjudicated on the merits in State court proceedings," a federal court may grant habeas relief only if the state court's "adjudication of the claim" either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). However, even though the "AEDPA imposes a requirement of deference to state court decisions, [federal courts] can hardly defer to the state court on an issue that the state court did not address." *Fortini v. Murphy*, 257 F.3d 39, 47 (1st Cir. 2001). Therefore, where the state court did not adjudicate the petitioner's claim on the merits, the federal court's review of that claim is de novo. *Norton v. Spencer*, 351 F.3d 1, 5 (1st Cir. 2003). Factual determinations made by the state court are presumed to be correct, with the petitioner bearing "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III.   ANALYSIS

Mr. Spratt's Petition contains eight grounds for relief: 1) the State deliberately withheld material exculpatory evidence in violation of *Brady v. Maryland* and coerced Mr. Perrin, the only eyewitness, to commit perjury; 2) the State manufactured evidence and coerced Mr. Warren to commit perjury; 3) the state trial justice failed to properly consider the five factors of witness reliability against the prejudicial effect of suggestive procedure in evaluating Mr. Perrin's testimony; 4) ineffective assistance of counsel; 5) the State was negligent in its pre-trial investigation, specifically in its witness identification procedures; 6) Mr. Perrin's testimony about his identification of the suspect, including the physical description, was unreliable and

physically impossible; 7) Mr. Spratt's sentencing as a Habitual Offender was an abuse of discretion; and 8) the additional twenty consecutive years to his life sentence was unconstitutional.

## A.    GROUNDS I, III & V – PHOTOGRAPHS AND IDENTIFICATION

These three related grounds deal primarily with three sets of withheld arrest photographs of Mr. Spratt ("prior-arrest photographs") and one set of arrest photographs taken the night Mr. Spratt was arrested ("arrest photographs"), five or six additional profile photographs ("alleged additional profile photographs"), Mr. Perrin's allegedly orchestrated courthouse identification of Mr. Spratt, and his subsequent testimony.   In Grounds One, Three and Five, Mr. Spratt alleges *Brady* violations and violations of the Fourteenth Amendment of the Constitution, asserting that the State 1) deliberately withheld material and exculpatory evidence, 2) staged a suggestive courthouse encounter, and 3) coerced witness Mr. Perrin to give perjured, unreliable, and prejudicial testimony.

### 1.    Prior arrest photographs

Mr. Spratt argues that the State withheld photographs of him in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).   Mr. Spratt points to the fact that in November 2008, in response to his discovery request during his state post-conviction-relief action, the state produced four sets of frontal and profile photographs taken of him — his "arrest photographs," as well as three sets of "prior-arrest photographs" from an unrelated charge.   The police failed to show those "prior-arrest photographs" to Mr. Perrin even though he said he saw the alleged perpetrator only in profile, thus rendering his identification of Mr. Spratt unreliable.[3]   Mr. Spratt argues that the

---

[3] While the police had these "prior-arrest photographs" of Mr. Spratt in their possession when they showed Mr. Perrin the frontal-only photographic array the day after the murder, the record

existence of a profile photograph taken the night he was arrested proves that Mr. Perrin lied when he testified that he never saw profile angle photographs.

The State admits that it did not produce certain photographs prior to his criminal trial. Nevertheless, the State urges the Court to find that the Rhode Island Supreme Court's denial of his *Brady* claim were not contrary to, or involved an unreasonable application of federal law.

There is no dispute that the State did not turn over the "prior-arrest photographs" of Mr. Spratt in its possession prior to trial. The question then becomes whether that evidence was favorable to Mr. Spratt and "material either to guilt or to punishment." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *Brady*, 373 U.S. at 87). Not all incidences of undisclosed materials merits consideration of a habeas petition, however. "[E]ven a wrongful withholding of evidence is not a basis for *Brady* relief unless it was prejudicial, meaning (in this context) either a likelihood of a different result or circumstances that otherwise shake a court's confidence in the result of the trial." *López v. Massachusetts*, 480 F.3d 591, 595 (1st Cir. 2007) (citing *Strickler v. Greene*, 527 U.S. 263, 281 (1999); *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

Regarding the "prior-arrest" and "arrest photographs" of Mr. Spratt, the Rhode Island Supreme Court credited the hearing justice's finding that they "were valueless for purposes of the case at trial, because Mr. Perrin's identification of [Mr. Spratt during trial] was not based upon [the arrest] photographs." *Spratt II*, 41 A.3d at 991. Those photographs "had nothing to do with whether he could or could not identify [Mr. Spratt] in court." *Id.* The hearing justice additionally found, based on briefing and argument during trial, that when Mr. Perrin saw Mr. Spratt at the courthouse, he "had an independent recollection of [Mr. Spratt]." *Id.* He also

---

does not disclose why the police never showed Mr. Perrin profile photos from prior arrests in a photo array as he requested.

reiterated that Mr. Perrin's identification of Mr. Spratt was "rock-solid." *Id.* "Mr. Perrin's identification of Spratt was not based on any identification from a photograph, but was instead based on the chance encounter at the courthouse and on having witnessed the crime itself." *Id.*

Moreover, upon its independent review the Rhode Island Supreme Court concluded that "[b]ecause of the abundant evidence of Spratt's guilt," "such production would not have avoided his conviction." *Spratt II*, 41 A.3d at 991. To support its conclusion, the court ruled:

> Spratt's guilt 'was not predicated solely upon [the testimony of] Mr. Perrin.' Indeed, the hearing justice recalled that 'there was other strong and overwhelming testimony' indicating Spratt's culpability. For example, in addition to Mr. Perrin's testimony, the hearing justice took note of the witness testimony of Mr. Warren and Mr. Tortolani, both called by the state, who testified about Spratt's actions on the night of the murder. The hearing justice continued by finding that the accumulation of evidence against Spratt at trial was 'devastatingly inculpatory.'

*Id.* at 992. In light of this testimony and other evidence, it was clear to the Rhode Island Supreme Court that "even if Spratt's four sets of arrest photographs had been produced before trial, he has fallen significantly short in demonstrating any 'likelihood that trial counsel[,] using the undisclosed information[,] could have created a reasonable doubt in the minds of one or more jurors to avoid a conviction.'" *Id.* (citing *State v. Pona*, 810 A.2d 245, 250 (R.I. 2002)).

Moving on to the "alleged additional profile photographs" that Mr. Spratt alleges were taken of him upon Mr. Perrin's request to see a profile view, Mr. Spratt acknowledges that these photographs were not produced with the other sets and have never surfaced since. The State denies that these photographs ever existed.

"A state court decision is contrary to clearly established federal law if it 'contradicts the governing law set forth in the Supreme Court's cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court' but reaches a different result." *Companonio v. O'Brien*, 672 F.3d 101, 109 (1st Cir. 2012) (quoting *John v. Russo*, 561

F.3d 88, 96 (1st Cir. 2009)).   In *Spratt II*, the Rhode Island Supreme Court applied *Brady* to Mr. Spratt's claim and determined that Mr. Spratt failed to meet his burden of proving a discovery violation because it "discern[ed] no evidence from the record that the police ever took these 'five or six' additional profile photographs." *Id.*, 41 A.3d at 991.   It concluded, based on a review of the trial and post-conviction hearing testimony, that Mr. Spratt had not met his burden to show that the undisclosed evidence was favorable and/or material. *Id.* at 992.   In light of the complete lack of evidence that "alleged additional profile photographs" were taken and of the jury's conviction based on the "devastatingly inculpatory" "accumulation of evidence against [Mr.] Spratt at trial," this decision neither contradicts the governing law, nor does it reach a conclusion different than one reached by the United States Supreme Court on materially indistinguishable facts.   As such, this conclusion was not "contrary to" clearly established United States Supreme Court law.

### 2.   Mr. Perrin's Courthouse Identification and Testimony

Mr. Spratt next asserts that Mr. Perrin's presence in the courthouse during Mr. Spratt's trial at the same moment Mr. Spratt walked by him in custody, leading to Mr. Perrin's identification of Mr. Spratt as the perpetrator, was orchestrated and unduly suggestive and that his subsequent testimony was untruthful and prejudicial.

Presuming that the Rhode Island Supreme Court's factual determinations are correct as the Court must, *Companonio*, 672 F.3d at 109, the facts in this case reveal that Mr. Perrin was 90% sure the day after the murder of who he saw running from the parking lot after the victim was shot, but would not positively identify anyone without seeing profile photographs. *Spratt II*, 41 A.3d at 990.   The court proceeded to determine that, during Mr. Spratt's trial,

> Mr. Perrin came to the courthouse for a meeting with the state prosecutor.   While sitting in a courthouse hallway waiting for the meeting, Mr. Perrin saw Spratt

> being escorted down the hallway by two marshals.  Soon afterward, in a meeting with state prosecutors, defense counsel, and police detectives, Mr. Perrin reported the recent chance encounter by stating 'I saw him; and as soon as I saw him, I knew who he was.'

*Id.* at 989.  In light of these facts and its previous rulings in *State v. Bertram*, 591 A.2d 14 (R.I. 1991) and *State v. Pailin*, 576 A.2d 1384, 1389 (R.I. 1990), the Rhode Island Supreme Court determined that the encounter between Mr. Perrin and Mr. Spratt was not planned and that the trial court's decision to permit Mr. Perrin to identify Mr. Spratt at trial was not error.  It found that:

> In the instant case, there is likewise no evidence that police or prosecutors planned the encounter between Spratt and Mr. Perrin.  Furthermore, after this encounter came to light, the trial justice conducted a mid-trial voir-dire hearing out of the presence of the jury, consuming fifty-seven pages of trial transcript, in which Mr. Perrin was subject to extensive direct and cross-examination.  Finding that the encounter was totally accidental and without any orchestration by the state, the trial justice allowed Mr. Perrin to identify Spratt at trial.  The hearing justice, upon review of Spratt's postconviction-relief application, recognized that extensive effort at trial, stating that the 'chance encounter * * * ha[d] been gone over and fully briefed and argued during the course of the trial, and clearly [Mr. Perrin] had an independent recollection of [Spratt].'  Accordingly, we discern no error in the hearing justice's finding that Spratt's contention was without merit.

*Spratt II*, 41 A.3d at 989.

This Court accepts the state court's factual findings and finds that Mr. Spratt's allegations of a conspiracy between the police or prosecutors to plan an encounter and force Mr. Perrin to identify him is totally unfounded in this record.  Moreover, Mr. Spratt's contention in Ground Five that the State negligently undertook the pre-trial investigation of his case, specifically referencing the way Mr. Perrin ultimately identified him, fails in light of the Rhode Island Supreme Court's determination that the State did not orchestrate the courthouse encounter, the procedure surrounding the photo arrays was not prejudicial, Mr. Perrin "had an independent recollection of" Mr. Spratt from the night of the murder, and the evidence of Mr. Spratt's guilt

was overwhelming. *See, e.g., id.* at 988-92. These findings also defeat Mr. Spratt's argument that his trial was unfair and in violation of his constitutional rights. Mr. Spratt's speculative contention, contrary to the Rhode Island Supreme Court's factual findings, that the courthouse encounter was orchestrated in order to coerce Mr. Perrin to positively identify him does not in any way convince this Court that the Rhode Island Supreme Court's determination was contrary to clearly established federal law as determined by the United States Supreme Court.

### 3.    Mr. Perrin's Testimony in light of the *Biggers* factors

Mr. Spratt further alleges in Ground Three that the state court erred in failing to consider the five factors of witness reliability as measured against a suggestive courthouse encounter outlined in *Neil v. Biggers*, 409 U.S. 188 (1972).[4]   If the Rhode Island Supreme Court had applied *Biggers*, he asserts, the court would have thrown out Mr. Perrin's identification of Mr. Spratt and he would not have been convicted. The State responds that Mr. Spratt failed to raise this issue below and therefore it is not properly before this Court. Alternatively, the State argues that while the Rhode Island Supreme Court did not specifically apply the five *Biggers* factors, it exhaustively reviewed not only the circumstances of Mr. Perrin's courthouse encounter, including the fifty-seven pages of mid-trial voir dire transcript, but also the in-court identification, clearly weighing the reliability of the identification and testimony in light of any prejudice to Mr. Spratt.  As such, the State argues that the Rhode Island Supreme Court's determination was not contrary to United States Supreme Court precedent.

The Fifth and Fourteenth Amendments protect against the deprivation "of life, liberty, or property, without due process of law." U.S. Const. Amends. V, XIV.  The United States

---

[4] This test consists of factors such as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation and the length of time between the crime and the confrontation. *Biggers*, 409 U.S. at 199-200.

Supreme Court explained that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). "Pretrial identifications violate due process requirements when they are 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Johnson v. Dickhaut*, 308 Fed.Appx. 454, 456 (1st Cir. 2009) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 105 n. 8 (1977) (internal citation omitted).

United States Supreme Court case law, however, does not require a specific *Biggers* inquiry in this case. "In *Simmons v. United States*, 390 U.S. 377 (1968), the [United States Supreme] Court created a two-pronged test for the exclusion of identifications based on impermissibly suggestive photo arrays."[5] *U.S. v. Maguire*, 918 F.2d 254, 263 (1st Cir. 1990). "The first prong involves determination of whether the identification procedure was impermissibly suggestive. If it was not, the court need proceed no further in its inquiry." *Id.* Because the Rhode Island Supreme Court found that Mr. Perrin's testimony was reliable and not the result of an impermissibly suggestive procedure, according to the United States Supreme Court in *Simmons*, it need not have engaged in the *Biggers* analysis.

Moreover, after reviewing the mid-trial voir dire where "Mr. Perrin was subject to extensive direct and cross-examination," the Rhode Island Supreme Court found that the hearing justice did not err in determining that Mr. Perrin "had an independent recollection of" Mr. Spratt from that night. *Spratt II*, 41 A.3d at 989. The Court finds that the state court's decision that

---

[5] While Mr. Spratt's argument in this case relates to the courthouse encounter as opposed to a photo array, this analysis had been applied to in-person identification scenarios. *See United States v. Fields*, 871 F.2d 188 (1st Cir. 1989); *Perron v. Perrin*, 742 F.2d 669, 675 (1st Cir. 1984).

Mr. Perrin's identification was reliable and not impermissibly suggestive did not result in an unreasonable application of United States Supreme Court case law.

Therefore, the Court GRANTS the State's Motion to Dismiss Grounds One, Three, and Five.

## B.    GROUND II –TESTIMONY COERCED

In essence, Mr. Spratt's Ground Two alleges prosecutorial misconduct. Mr. Spratt argues that the State coerced Mark Warren to testify that Mr. Spratt was the perpetrator and that the State knew that his testimony identifying Mr. Spratt was not truthful. Mr. Warren testified that from the place he was standing, he saw Mr. Spratt enter the parking lot attendant booth, close the door, turn out the lights, and run out of the booth passing him. Mr. Spratt alleges that Mr. Warren later told him at the ACI that he lied in his statement to police. Mr. Warren was inexplicably released from prison without serving time for his violations. His testimony combined with his release is, Mr. Spratt argues, evidence that the State coerced Mr. Warren to lie and then rewarded him for his perjured testimony. The State argues that this ground is without foundation.

Mr. Spratt raised this ground in his state post-conviction petition and there is no dispute that the Rhode Island Supreme Court did not address this specific ground in its decision denying Mr. Spratt's petition, although it is clear that it did consider Mr. Warren's role in the incident and his testimony at trial. Because the state court did not adjudicate Mr. Spratt's claim on the merits, this Court's review of that claim is de novo. *Norton v. Spencer*, 351 F.3d 1, 5 (1st Cir. 2003).

Mr. Spratt makes his claim on this ground under the Fourteenth Amendment due process clause, which "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*,

397 U.S. at 364. Mr. Spratt alleges that he would not have been indicted or convicted without Mr. Warren's coerced, perjured testimony elicited at the hands of the State. "[W]hen a prosecutor knowingly uses perjured testimony, 'a conviction ... is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Perkins v. Russo*, 586 F.3d 115, 119 (1st Cir. 2009) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)).

Upon its own de novo review, this Court finds that Mr. Spratt has failed to present any evidence – not based on speculation or conjecture – that Mr. Warren's testimony was either coerced or untruthful. Mr. Spratt essentially alleges that Mr. Warren could not have identified him as the perpetrator because he was not standing where he testified he was standing when he observed Mr. Spratt running from the attendant booth. This allegation is based on the statement of William Spadoni, an eyewitness who did not testify at trial, who said that Mr. Warren was not standing there. Not only does he fail to present evidence proving clearly and convincingly that Mr. Warren lied in his statement and at trial about his and Mr. Spratt's role in the events on the evening of December 20, 1995, but he also fails to present any evidence that the State knew Mr. Warren was giving perjured testimony and was responsible for coercing him to do so.

Mr. Spratt's allegation about Mr. Warren's testimony, in the absence of any clear and convincing evidence, is not sufficient to overcome the presumption that the Rhode Island Supreme Court correctly judged the facts. *See* 28 U.S.C. § 2254(e)(1) (factual determinations made by the state court are presumed to be correct, with the petitioner bearing "the burden of rebutting the presumption of correctness by clear and convincing evidence.") Those facts are that Mr. Spratt, accompanied by Mr. Warren, went to a parking lot on Weybosset Street where Mr. Spratt admitted that he and Mr. Warren went there to rob him. *Spratt I*, 742 A.2d at 1196.

Deciding against that course because Mr. Tortolani was a friend and after unsuccessfully attempting to convince Mr. Tortolani to fake a robbery and give him the money, Mr. Spratt left the Weybosset lot and Mr. Warren followed. *Id.* Mr. Warren accompanied Mr. Spratt to the Snow Street parking lot where the victim was working and saw him enter the booth and close the door behind him. *Id.* The lights in the booth went dark and, seconds later, he saw Mr. Spratt running out of the booth. *Id.* Mr. Warren testified that he heard a cry for help and when he asked Mr. Spratt about what he heard, Mr. Spratt said that he and the attendant had "scuffled." *Id.* at 1196-97. Due to Mr. Warren's participation in the incident and his presence at the scene, whether he was standing in one location or another, the court found that Mr. Warren was one of three witnesses who "sufficiently identified Spratt as the perpetrator." *Spratt II*, 41 A.3d at 994.

Because the Court does not find that Mr. Warren's testimony was coerced or perjured, it need not consider whether there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs*, 427 U.S. at 103. Even if the Court were to consider this step, it agrees with the state court's factual findings and concurs that all of the trial testimony against Mr. Spratt was "strong and overwhelming" and "the accumulation of evidence against Spratt at trial was 'devastatingly inculpatory,'" *Spratt II*, 41 A.3d at 992, such that the jury's judgment would not have been affected. Therefore, the Court GRANTS the State's motion to dismiss Ground Two.

## C.    GROUND IV – INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Spratt argues that his public defender trial counsel was ineffective because he failed: to raise suggestiveness as an issue in challenging Mr. Perrin's eyewitness testimony; to expose the State's non-disclosure of all of the photographs of Mr. Spratt; to file a motion for new trial based on Mr. Perrin's alleged perjured testimony; to put a detective on the stand to question him

about the "alleged additional profile photographs;" to call a witness to testify that Mr. Warren could not have been standing where he testified he was standing to observe Mr. Spratt the night of the murder; to raise the suggestiveness of Mr. Perrin's in-court identification; and to raise the fact that the murder weapon was found in the possession of another criminal eight months after the murder and that person said he did not get the gun from Mr. Spratt.[6]  The State argues that the Rhode Island Supreme Court's application of the United States Supreme Court's *Strickland v. Washington* standard to determine whether Mr. Spratt received effective assistance of counsel does not constitute a determination contrary to, or involving an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d).

The "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 690 (1984).  Under the United States Supreme Court holding in *Strickland*, Mr. Spratt must show that his counsel's performance was both deficient and prejudicial to the extent that the outcome of his case would have been different.  *Tevlin v. Spencer*, 621 F.3d 59, 66 (1st Cir. 2010) (citing *Strickland*, 466 U.S. at 687).  According to *Strickland*, deficiency "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  In order to prove that counsel's performance prejudiced the outcome, the defendant must show "that counsel's errors

---

[6] Mr. Spratt lists numerous other grounds in his Petition, but the Court will not address those because he failed to raise them with the state court below and as such, they are procedurally barred. *See* 28 U.S.C. § 2254(b) & (c); *Scarpa v. Dubois*, 38 F.3d 1, 6 (1st Cir. 1994); *Nadworny v. Fair*, 872 F.2d 1093, 1096 (1st Cir. 1989).

were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In order to demonstrate to the Court that his counsel was ineffective, Mr. Spratt, therefore, must demonstrate "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *id.* at 689, and an attorney's assistance can be considered "deficient only if no competent attorney would have acted as he did." *Wright v. Marshall*, 656 F.3d 102, 108 (1st Cir. 2011) (citing *Tevlin*, 621 F.3d 59 at 66)).

The Rhode Island Supreme Court observed that Mr. Spratt's ineffective assistance claims fit into two categories: those related to Mr. Perrin's testimony and the murder weapon. Regarding the first category, which encompasses the bulk of Mr. Spratt's claim, the court held that because it did not find a discovery or *Brady* violation impacting Mr. Perrin's testimony, Mr. Spratt failed to prove that his "'counsel's representation fell below an objective standard of reasonableness.'" *Spratt II*, 41 A.3d at 993 (quoting *Strickland*, 466 U.S. at 688). As to the second category, the court found that Mr. Spratt "failed to overcome the 'strong presumption' that his trial counsel's representation was not unreasonable" and "[e]ven if [it] considered trial counsel's decision to not present this argument during trial to be error, there is no reasonable probability that the jury would have returned with a different verdict." *Id.* The court further remarked on the hearing justice's repeated observations of Mr. Spratt's counsel's effectiveness, noting that "'[h]e was a thorough and engaging attorney and zealous on [his] behalf.'" *Id.*

After reviewing the entire record in this case, this Court finds that Mr. Spratt's lawyer's decisions "fall[ ] well within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, and therefore, Mr. Spratt cannot meet the stringent standard required to make an ineffective assistance of counsel claim under the AEDPA. The Rhode Island Supreme Court

applied *Strickland* to Mr. Spratt's claim for ineffective assistance of counsel and concluded that Mr. Spratt neither met his burden to show that his attorney's performance was deficient nor that any decisions he made prejudiced the outcome of his case. *Spratt II*, 41 A.3d at 993-94. In light of the trial court's observations of the attorney's competence on Mr. Spratt's behalf and the dearth of constitutional error at trial, the Rhode Island Supreme Court's decision neither contradicts the governing law, nor does it reach a conclusion different than one reached by the United States Supreme Court on materially indistinguishable facts. As such, the State's motion to dismiss Ground Four is GRANTED.

### D.   GROUND VI – INSUFFICIENT EVIDENCE

In this claim, Mr. Spratt essentially alleges that the evidence presented at his trial was unreliable and as such, not sufficient to support his conviction. The State responds, citing two pages from the Rhode Island Supreme Court's decision affirming Mr. Spratt's conviction laying out the extensive evidence, that that court reasonably applied federal law.

Where a petitioner argues that the evidence was insufficient to convict him, the Court must not determine "whether there is a plausible alternate interpretation of the evidence," but "'whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Morgan v. Dickhaut*, 677 F.3d 39, 53 (1st Cir. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The Court presumes that the state court's factual determinations were correct and issues a writ only if that court's decision based on those facts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Court has set forth earlier in this decision the facts upon which the Rhode Island Supreme Court rested its decision to deny

Mr. Spratt's appeal of his judgment of conviction and has recognized that that court's determinations were not an unreasonable application of clearly established federal law or an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d); *see also Spratt I*, 742 A.2d at 1196-97.

Moreover, not only does the Court find that the state court was reasonable in its decision, but also finds that Mr. Spratt has failed in his burden to show that "no reasonable juror could have voted to convict." *O'Laughlin v. O'Brien*, 577 F.3d 1, 3 (1st Cir. 2009). Again, the Rhode Island Supreme Court noted "the abundant evidence of Spratt's guilt," that his "'was not predicated solely upon [the testimony of] Mr. Perrin,'" that "there was other strong and overwhelming testimony" of his guilt, and "that the accumulation of evidence against Spratt at trial was 'devastatingly inculpatory.'" *Spratt II*, 41 A.3d at 991-992. Because the Rhode Island Supreme Court was reasonable in its decision on the facts of this case, no relief required under the AEDPA. The State's motion to dismiss Ground Six is GRANTED.

### E.   GROUNDS VII & VIII - SENTENCING

Mr. Spratt next challenges his sentencing as a habitual offender under Rhode Island General Laws § 12-19-21, arguing that he should not have been so classified because although he was convicted of two felonies, he only served six months on each sentence. The State responds that this claim is not properly cognizable in a federal habeas petition.

The Court agrees with the State. "[W]here a state court has denied the claim on an independent and adequate *state-law* ground, whether procedural or substantive, federal habeas review is barred, in the absence of some exceptions."[7] *Pina v. Maloney*, 565 F.3d 48, 52 (1st

---

[7] These exceptions are circumstances where the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure

Cir. 2009); *Mello v. DiPaulo*, 295 F.3d 137, 151 (1st Cir. 2002) (Section 2254 "does not authorize federal courts to decide questions of state law."). It is not within the Court's purview to question the Rhode Island Supreme Court's analysis of this purely state-law question. Therefore, the State's Motion to Dismiss Ground Seven is GRANTED.

Mr. Spratt raises an additional ground relating to the sentence he received. Relying on *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004), Mr. Spratt argues that his enhanced sentence was unlawful and unconstitutional. The State counters that this claim is procedurally barred because Mr. Spratt failed to raise this specific ground based on his sentence before the state court. It further argues that, even if this claim were exhausted below, it would fail because the holdings of *Apprendi* and *Blakely* are not retroactively applicable to cases with final judgments of convictions on collateral review. In other words, because Mr. Spratt convictions became final prior to those decisions, those holdings are not available to him.

A state prisoner seeking federal habeas relief must first exhaust his available state court remedies. *See* 28 U.S.C. § 2254(b) & (c). In order to exhaust his claims, he must have "fairly presented" his federal claim to the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Hall v. DiPaolo*, 986 F.2d 7, 11 (1st Cir. 1993). In addition, he must have presented to the state court the same factual and legal theory on which his federal habeas petition is based in order for that federal petition to be properly presented. *Scarpa v. Dubois*, 38 F.3d 1, 6 (1st Cir. 1994); *Nadworny v. Fair*, 872 F.2d 1093, 1096 (1st Cir. 1989). Although, Mr. Spratt argues that he did raise this ground below, the Court does not find any reference to *Apprendi* and *Blakely* or arguments based on those holdings. Here, the Court finds that Mr. Spratt never presented his

---

to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Neither of these exceptions applies here.

claim based on *Apprendi* and *Blakely* to any of the Rhode Island state courts when he had the opportunity during his state post-conviction relief proceedings. *See* R.I. Gen. Laws 10–9.1–1 *et seq.* Accordingly, Mr. Spratt's Ground Eight claim for unconstitutional sentencing should be dismissed as unexhausted. As such, the State's motion to dismiss Mr. Spratt's Ground Eight is GRANTED.

## IV.    CONCLUSION

Based on the foregoing, the State's motion to dismiss Mr. Spratt's Petition is GRANTED.

IT IS SO ORDERED.

John J. McConnell, Jr.
United States District Judge

April 18, 2013